# Rottmund *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Grade crossing—" Stop, look and listen"— Evidence as to signals.*

1. In a grade crossing accident case where the plaintiff's testimony shows that the train was running at a very high rate of speed and three witnesses for the plaintiff testify positively that the bell was not rung and the whistle did not blow, not that they did not hear the sound of either, the question of the railroad company's negligence is for the jury, although its witnesses testify that the whistle blew and the bell was rung.

2. Where the plaintiff in such a case testifies that he stopped, looked and listened at a point about seventy-five or 100 feet from the track where the view was somewhat obstructed, but saw and heard no train, and that he again stopped, looked and listened when his horse was about four feet from the track, and there could see the track for about 600 or 700 feet from the crossing, and not seeing nor hearing a train started across with the result that his wagon was struck in the rear by a train, the question of the plaintiff's contributory negligence is for the jury.

*Practice, C. P.—Trial—Verdict—Recording verdict—Polling jury.*

3. The only valid verdict is that which the jury announce orally in court, and which alone is received and recorded as the jury's finding.

4. Where a jury orally announce that they find a verdict in favor of the plaintiff and against the defendant for a sum stated, and this is duly recorded, the action of the court in reassembling the jury so as to let them make a written memorandum of their verdict which they had submitted, conform to the oral verdict previously recorded, is unnecessary and unavailing.

5. A motion to poll the jury cannot be made after the verdict has been openly announced to the court, affirmed by the jury collectively and recorded on the minutes.

6. The reassembling of the jury by the court in order to make a written verdict conform to the oral verdict previously rendered and recorded, affords no occasion for a motion to poll the jury.

Argued May 17, 1909.  Appeal, No. 66, Jan. T., 1909, by defendant, from judgment of C. P. Lancaster Co., Nov. T., 1906, No. 74, on verdict for plaintiff in case of John Rottmund v. The Pennsylvania Railroad Company.  Before Brown, Mestrezat, Potter, Elkin and Stewart, JJ.  Affirmed.

Trespass to recover damages for personal injuries.  Before Landis, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $7,000, upon which judgment was entered for $5,000, all above that amount having been remitted.  Defendant appealed.

*Errors assigned* among others were (3) in refusing binding instructions for defendant; (4) in permitting the jury to reassemble and reform its verdict; and (5) in denying defendant's request for a poll of the jury.

*W. U. Hensel,* for appellant.—The overwhelming weight of the testimony was to the effect that the engineer of the approaching train gave due notice at the proper place by whistling: Keiser v. R. R. Co., 212 Pa. 409.

The accident was due to the palpable negligence of the plaintiff: Carroll v. R. R. Co., 12 W. N. C. 348; Yevsack v. R. R. Co., 221 Pa. 493; Walsh v. R. R. Co., 222 Pa. 162; Gangawer v. R. R. Co., 168 Pa. 265; Myers v. R. R. Co., 150 Pa. 386; Blotz v. R. R. Co., 212 Pa. 154; Kinter v. R. R. Co., 204 Pa. 497; Kraus v. R. R. Co., 139 Pa. 272; Moose Brewing Co. v. R. R. Co., 36 Pa. Superior Ct. 549.

The defendant was entitled to have a poll of the jury: Moose Brewing Co. v. R. R. Co., 36 Pa. Superior Ct. 549; White v. School Dist., 2 Pa. C. C. Rep. 1.

*B. F. Davis*, for appellee, cited as to the question of negligence: Boggs v. Ry. Co., 216 Pa. 314; Howard v. R. R. Co., 219 Pa. 358; Calhoun v. R. R. Co., 223 Pa. 298; Guthrie v. R. R. Co., 222 Pa. 366; Sefcik v. R. R. Co., 223 Pa. 348.

Cited as to the rendering of the verdict: Com. v. Breyessee, 160 Pa. 451.

OPINION BY MR. JUSTICE MESTREZAT, June 22, 1909:

This action was brought to recover damages for injuries to the plaintiff received at a grade crossing in the city of Lancaster. After a careful examination of the evidence, we are satisfied that it was sufficient to justify the learned judge in submitting the negligence of the defendant and the contributory negligence of the plaintiff to the jury. The plaintiff's testimony tended to show that the train which collided with the wagon was running at the rate of thirty-five or forty miles an hour, and that no notice of its approach to the crossing was given by sounding the whistle or ringing the bell. The learned counsel of the appellant is in error in saying that the plaintiff's testimony as to the notice was entirely negative. The plaintiff himself testified that the whistle was not sounded and the bell was not rung until the train was almost upon him, and in this he was supported by at least three disinterested witnesses who testified that no such notice was given of the train's approach to the crossing. This testimony was positive, not negative. The witnesses said that the bell was not rung and the whistle did not blow; not that they did not hear the sound of either. This was sufficient to send the case to the jury on the question of the defendant's negligence, notwithstanding the testimony of the defendant's witnesses who testified that the whistle blew and the bell was rung.

The learned trial judge was right in refusing to declare the plaintiff guilty of negligence as a matter of law. The plaintiff testified that as he approached the crossing he stopped, looked and listened at a point about seventy-five or one hundred feet north of the track. His view was obstructed by reason of a corn field on his right and possibly some cars on the tracks. He heard or saw no train coming in either direction. He pro-

ceeded to a point where his horse was about four feet from the track when he again stopped, looked and listened. He testifies that at this point he could see west up "around the cork works somewhere." The west end of the cork works property was about 600 or 700 feet from the crossing. The plaintiff says he neither saw nor heard a train approaching. He then proceeded to cross the tracks and had almost cleared both tracks when a train running very rapidly from the west struck the rear end of the wagon and the plaintiff was injured. It needs but the statement of these facts to show that the question of the plaintiff's contributory negligence was for the jury. The appellant's argument is based upon the false assumption that the plaintiff could see 1,700 or 1,800 feet west along the railroad track when he stopped the second time. It is true there was evidence from which the jury might have found that as a fact, but the plaintiff's testimony warranted the jury in finding that he could see in the direction from which the train approached only 600 or 700 feet. The train which collided with the plaintiff's wagon approached from the west, on the south track. The horse and a part of the wagon were clear of this track when the collision occurred. This fact supports the testimony of the plaintiff that he could see but a few hundred yards west of the crossing at the time he stopped immediately before crossing the tracks. The facts of this case take it out of the rule announced in Carroll v. Pennsylvania Railroad Company, 12 W. N. C. 348, that "it is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." We have no disposition to abrogate or pare down this rule. Its enforcement protects the traveler on the highway as well as the passenger on the train. The traveler must understand that if he walk or ride immediately in front of an approaching train he is responsible for the accident which follows. Immediate collision with a train when a traveler steps upon a railroad track at a crossing must be regarded as conclusive evidence that the traveler failed to perform his duty to stop, look and listen before he attempted to make the crossing. But as we have said in numerous decisions this doctrine

is applicable only in clear cases, and where the facts which disclose the traveler's negligence are undisputed. In the case at bar, the plaintiff's horse was not struck when the animal stepped upon the track. On the contrary, the horse and the greater part of the wagon had passed over the south track when the rear end of the wagon was struck by the approaching train. The plaintiff's testimony, therefore, that he stopped, looked and listened, and neither saw nor heard an approaching train is not contradicted by the manner nor the time of the collision. On the contrary, as we have above intimated, his testimony is corroborated by the fact that the collision occurred with the rear end of the wagon. If the train was running at the rate of thirty-five or forty miles an hour it would take it but a few seconds to reach the crossing from a distance beyond the cork works, 600 or 700 feet away, which was the distance the plaintiff could see. The testimony, therefore, on the question of the plaintiff's negligence in approaching the crossing was for the jury.

The appellant further alleges that it was error for the court to permit the reassembling of the jury to "alter and reform its verdict after it had been rendered and recorded and after the jurymen had separated;" and in denying the defendant's request for a poll of the jury after it had reassembled. An examination of the record in the case will show that no reversible error was committed by the court under the well-established practice in this state.

In 1 Troubat & Haly's Practice, sec. 716, it is said: "When the jury have agreed, they return to the bar, and, by their foreman, publicly give their verdict, which is recorded by the clerk in his minutes, who then reads the entry to the jury, in order that, if he has made a mistake in taking down the verdict, it may immediately be corrected. There is no verdict of any force except a public verdict, given openly in court." This is the practice uniformly followed throughout the state so far as we are advised. All the authorities agree that the only verdict is that which the jury announce orally in court and which alone is received and recorded as the jury's finding: MITCHELL, J., in Kramer v. Kister, 187 Pa. 227.

In the case at bar, the jury returned to the court at 2 p. m. and announced that they found a verdict "in favor of the plaintiff and against the defendant for the sum of $7,000." At 3 p. m. the court reassembled the jury and the following occurred: "The Court: In the case of Rottmund v. Pennsylvania Railroad Company, the clerk took the verdict 'in favor of the plaintiff and against the defendant for the sum of $7,000.' The jury are all present, and were all then. I see now that, in their written verdict, they have, 'find in favor of John Rottmund, plaintiff, for $7,000, and against'—and omit the defendant. I have called them together for the purpose of fixing that, and I give the gentleman who made this out the verdict. Mr. Hensel (counsel for defendant), on behalf of the defendant, objects, in view of the fact that the jury were discharged from a consideration of this case at two o'clock, and have since been separated from any further rendition of the verdict or amendment of any verdict which they may have handed in to the court prior to their discharge in this case and to their separation. The Court: I think they should make the written verdict conform to the verdict that they actually rendered, and I hand it to them for that purpose. Mr. Hensel excepts to the court taking any further verdict from the jury. Mr. Hensel also asks that, if any amendment is to be made to the verdict, the jury shall be polled. The Court: The court overrules the motion to poll, and gives the gentleman the benefit of an exception."

It thus appears that the jury returned to the court room, announced their verdict orally in the proper form and that it was accepted by the court and recorded. The verdict as returned and accepted by the court was not irregular, imperfect, or irresponsive to the issue tried. As stated by the learned judge, as will be observed, the jury announced to the court a verdict "in favor of the plaintiff and against the defendant for the sum of $7,000." The verdict therefore was proper in form and in substance. The court did not reassemble the jury to change the verdict, but as the judge stated he desired the jury to "make the written verdict conform to the verdict that they did actually render." There was no occasion

whatever for reassembling the jury. It was wholly immaterial that the verdict rendered was not in accord with the written formula sent out with the jury and returned by them. The verdict announced orally in court, accepted by it, and entered on the minutes, and not that stated in the written formula, was the verdict of the jury. This is distinctly ruled in Dornick v. Reichenback, 10 S. & R. 84, and has uniformly been held in subsequent cases. Mr. Justice WILLIAMS, speaking for the court in Commonwealth v. Breyessee, 160 Pa. 451, says (p. 457): "It is a sufficient answer to this motion (to arrest the judgment) to refer to the well settled rule that the verdict as recorded is the verdict of the jury and that the form prepared in the jury room though handed to the clerk is no part of the record and has no significance whatever. . . . It was wholly unnecessary to recall the jury. It was done out of abundant caution, but it did neither good nor harm. The verdict had been entered on the record in proper form, against the defendant on trial and the pencil memorandum was without the slightest legal significance." So in this case, the verdict was delivered in open court, was in proper form, was received by the court and entered upon its minutes. What the learned judge calls "their written verdict" was not a verdict, and cannot be considered as such in this case. His own statement in the colloquy between him and counsel shows that a proper verdict was rendered, ore tenus, one hour before he reassembled the jury. This verdict was rendered according to the uniform and established practice, was in proper form and, in the language of Mr. Justice WILLIAMS, "it did neither good nor harm" to reassemble the jury to "make the written verdict conform to the verdict that they did actually render."

The question of the right of the appellant to have the jury polled need not be considered or decided in this case. The verdict was that which was returned, accepted by the court and entered upon its minutes at 2 o'clock that afternoon. The subsequent attempt by the court to make the "written verdict" conform to that verdict was abortive, and does not affect the verdict as returned and entered upon the minutes of the court. When the jury, after having been discharged from

further consideration of the case, was reassembled for the purpose of making "the written verdict conform to the verdict that they did actually render" an hour previous, it was too late for the defendant to move for a poll of the jury. The motion cannot be made after the verdict has been announced in court, affirmed by the jury collectively, and recorded on the minutes: Commonwealth v. Schmous, 162 Pa. 326; Scott v. Scott, 110 Pa. 387; Malone v. State, 49 Ga. 210; 22 Ency. of Pl. & Pr. 935.

The assignments are overruled and the judgment is affirmed.